CROOK v. BRONSEN. See Case No. 1,549.
CROOK v. REDFIELD. See Case No. 1,549.
CROOK (UNITED STATES v.). See Case No. 14,891.
CROOKE v. LAFAYETTE COUNTY COURT. See Case No. 15,549.

---

## Case No. 3,413.
### CROOKE v. MAXWELL.
[5 Int. Rev. Rec. 69.]

Circuit Court, S. D. New York.    Feb. 1867.

DUTY ON SEA FREIGHT.

Statute of limitations in suits brought to recover from the United States duties claimed to have been exacted and paid in error.

This action was brought to trial on the 20th of February, inst. No witnesses were called in by the plaintiff [Septimus Crooke], who rested his case upon the following statement of facts, agreed upon between the parties:

This action was commenced April 24, 1863, to recover for an excess of duty paid to the defendant [Hugh Maxwell], as collector, under protest on additions made for sea freight and transhipment charges from Wales to Liverpool and London, and to make market

value at the latter ports, on railroad iron imported into New York between January, 1851, and May, 1853. And it is agreed that the plaintiff is entitled to recover in his said action, unless the court shall be of opinion that his claim is barred by the statute of limitations. It is agreed that the defendant, since said cause of action accrued, and before the commencement of any suit, has been absent from the country in Europe, a year and nine months. It is further agreed that under date of February 1, 1856, the secretary of the treasury issued a circular, known as general regulations No. 63, containing, among other things, the following instructions, viz.: "Freight or transportation from the foreign port of shipment to the port of importation is not a dutiable charge. In cases, therefore, of goods arriving in the United States after having been first transported from the place of their production or manufacture to another port or place whether in the same or another country, by land or by water, and thence transhipped for the United States,—provided satisfactory evidence be adduced, to the collector of the customs at the port where the said goods shall arrive, that they were originally shipped with the bona fide intention of having them transported to a port in the United States, as their final port of destination,—no dutiable costs or charges will have accrued, either on the transportation from the first to the intermediate port, or while remaining in or leaving the latter, the voyage or transportation being regarded as continuous from the country whence originally exported in good faith, on a declared destination for a port and parties in the United States. In illustration of the rule thus established, it may be remarked that, the evidence of final destination being satisfactory, no duties would be chargeable in ports of the United States on the freight or transportation, or charges in the intermediate ports, on goods originally from China, or Glasgow, or Cardiff, or Londonderry, to Liverpool; from Malaga to Valparaiso; from Dresden to Bremen; or from Basle to Havre, —on the said goods being transhipped for the United States from the several intermediate ports enumerated."

It is further agreed that on the 17th of March, 1856, the plaintiff, by his counsel, filed with the proper officer, under the collector, at the customhouse, a statement of his several importations of railroad iron, on which he claimed a return of duty on sea freight and transhipment charges, for adjustment under the above instructions; a copy of that portion of it in which the duties were paid to the defendant being annexed, and marked "A." That under date of October 4, 1856, the secretary of the treasury addressed to the collector of customs a letter, of which the following is a copy: "Treasury Department, Oct. 4th, 1856. Sir: On application being made to you by Messrs. A. Iselin & Co. and others, of New York, you are authorized

and directed to cause to be prepared the usual certified statements for return of 'duty on freight' in such cases where the same has been found to have been paid in excess, as decided by this department in general regulations No. 63, page 22, and under written protest, and transmit the same to this department for its consideration. Very respectfully, your obedient servant, James Guthrie, Secretary of the Treasury. H. J. Redfield, Esq., Collector of Customs, New York." That the plaintiff's claim was unadjusted when Mr. Redfield retired from the collectorship, July 1, 1857, and remained so until after Mr. Schell retired, in May, 1861. That under date of May 21, 1858, the secretary of the treasury addressed to Mr. Schell a letter, of which the following is a copy: "Treasury Department, May 21, 1858. Sir: I would call your attention to the instructions of the department, dated Oct. 4th, 1856, wherein authority is given to prepare and transmit the usual certified statements for return of duty on sea freight, paid under written protest. As the parties who represent several of the claims have made complaint of the delay attending the preparing of the same in your office, you are requested to have the above instructions complied with at your earliest convenience. I am, respectfully, Howell Cobb, Secretary of the Treasury. Augustus Schell, Collector, New York."

That notwithstanding these instructions to Mr. Redfield and Mr. Schell, they both neglected to adjust the plaintiff's claim, and on the 6th of July, 1860, he commenced a suit in this court for the recovery of the excess paid to defendant on the several importations embraced in the said statement, marked "A," and on the 23d of April, 1861, a verdict was had for the plaintiff, and, by order of the court, the case was referred to the collector for adjustment according to the usual practice at that time, and on the 25th of September, 1862, the collector made a report to the clerk of this court, of which the following is a copy: "U. S. Circuit Court—Septimus Crooke v. Hugh Maxwell. Customhouse, New York. Collector's Office, Sept. 25, 1862. Sir: The verdict in the above-entitled cause, as adjusted in this office, with interest to the 24th inst., amounts to the sum of four thousand nine hundred and thirty-four dollars, thirteen cents ($4,934.13). Respectfully, yours, C. P. Clinch, Deputy Collector. Kenneth G. White, Esq., Clerk of the United States Circuit Court, Southern District of New York."

The plaintiff relying on the truth of this report, judgment was entered on it September 30, 1862, for $4,934.13 damages, and $54.95 costs, making the total amount $4,989.08, which judgment was paid and satisfied of record, October 21, 1862. It is further agreed that neither the plaintiff or his attorney was consulted or advised with by the collector, or the person employed by him, in making said adjustment, nor had they

6FED.CAS.—55

any knowledge or suspicion that said adjustment was not correct, or that any items had been omitted, till some time in January, 1863, when it was accidentally discovered that a few items had been omitted, the extent of which was not ascertained till some time in April, 1863. This present suit is brought to recover the items so omitted in the adjustment of the verdict taken April 23, 1863.

The pleadings and papers in this suit, and also in the suit commenced July 6, 1860, may be used by either party. The affidavits read on the motion to set aside the verdicts in the cases of Massett v. Maxwell [Case No. 9,261], and two other cases argued in this court in February, 1863, may also be read in this case. If the court shall be of opinion, upon all the facts, that the plaintiff's claim is not barred by statute, a verdict is to be rendered for him, for the excess paid under protest on such items as were omitted in the adjustment of the former verdict.

E. Delafield Smith, Defendant's Atty.
Almon W. Griswold, Plaintiff's Atty.
May 27th, 1864.

Pursuant to the agreed statement of facts, the following treasury decision was put into the case, viz.:

"Treasury Department, May 18, 1858. Sir: In the certified statements of claims of J. Sawyer, S. A. Way, and S. L. Wiggins & Co., for return of excess paid on storage, it would appear, from a portion of the dates of importation, that they are debarred by the statute of limitations of your state. The department, therefore, before taking any action upon them, will require further information as to the fact, and also the various dates when the payments of the storage were made. I am, respectfully, Howell Cobb, Secretary of the Treasury. A. W. Austin, Esq., Collector, Boston."

"Customhouse, Boston. Collector's Office, May 20, 1858. Sir: I am in receipt of your letter of the 18th inst., requesting information in respect to the claims of James Sawyer, Samuel A. Way, and J. L. Wiggins, for storage exacted in excess, portions of which, from the dates of importation given, appear to be barred by the statute of limitation of this state. By the Revised Statutes of Massachusetts (chapter 120, § 1) 'all actions of assumpsit, or upon the case, founded on any contract or liability, expressed or implied, are required to be commenced within six years next after the cause of action shall accrue, and not afterward.' The action of Foster v. Peaslee [Case No. 4,979], on the judgment in which this class of claims is allowed, was commenced in the May term of the circuit court, 1856. The law was argued at the October term, and decided by the court against the collector. At the May term, 1857, judgment was entered and the decision acquiesced in by the department under date of June 16, 1857. It has been the practice, in claims of this description, where a single case was tried to determine the law, to ex-

tend to all the claimants under the decision the advantages in respect to limitation acquired by the party bringing the suit, provided their claims were equally valid in other particulars. Thus, in the cases in question, I deemed it proper to include in the statements all claims which accrued within a period of six years, prior to May, 1856, when the action of Foster was commenced. This rule was adopted to prevent a multiplicity of suits for the same cause, which would otherwise be likely to be brought, and so to save expense to the United States. Under this rule, none of the items embraced in the statements referred to in your letter are barred. Assuming, however, that claims which accrued six years or more, prior to June 16, 1857, the date of the department's acquiescence in the decision of the court, are cut off by this statute, then the item of $3 in the statement in favor of J. Sawyer is not allowable, the same having been paid on the 3d of April, 1851. (In the other cases an examination of the dates of payment, as appearing on the records of this office, shows that the several claims were made within the time limited by law. A memorandum of those dates, in all instances involving doubt, is enclosed.) Very respectfully, your obedient servant, (Signed) Arthur W. Austin, Collector. Hon. Howell Cobb, Secretary of the Treasury, Washington."

"Treasury Department, May 27, 1858. Sir: Your report relative to the claims of James Sawyer and others for return of excess paid on storage is received, and, the department having concurred therein, you are informed that all cases of a similar nature must only include statements * * * subsequent to May, 1850. I am, respectfully, (Signed) Howell Cobb, Secretary of the Treasury. A. W. Austin, Esq., Collector, Boston."

The affidavits in the case of Massett v. Maxwell, referred to in the statement of facts, showed, among other things, that it was the practice at the New York customhouse, up to 1861 or 1862, sanctioned by the secretary of the treasury, that where a question had been decided by the courts, and recognized and acquiesced in by the treasury department, the presentation to the collector of a merchant's claim under such decision entitled him to recover on all items overpaid within six years prior to such presentation. The testimony for the plaintiff being here closed, defendant's counsel offered in evidence the judgment in the former suit to show that the matter was res adjudicata. The judge said that by the agreement of facts the pleadings and papers in that suit might be referred to, if there was anything in them bearing on the question of the statute of limitations, but the defence of res adjudicata had not been pleaded in the case, and he should exclude the evidence as offered. No further testimony was offered, and the question of the statute of limitations was argued by counsel.

The plaintiff's counsel argued (1) that, the secretary of the treasury having made the decision in the Boston cases, the defendant should be estopped from setting up the statute. He urged that under the New York Code (section 110), a new promise made "by the party to be charged" took the case out of the statute, and that the directions of the secretary of the treasury to the collectors, which are binding in law, amounted to such a new promise; that he was "the party to be charged," because by the act of March 3, 1863 (section 12), the collector was discharged from liability on any judgment recovered in such actions as these, and the judgments were ordered to be paid out of the treasury of the United States.

The defendant's counsel answered, that the defendant, Maxwell, was the party to be charged, and there was no pretence that there was any new promise made by him.

Almon W. Griswold, for plaintiff.

S. G. Courtney, U. S. Dist. Atty., for the government.

SMALLEY, District Judge. No fact arises in this case, and the question which presents itself is one entirely of law. From the large amount involved, and from the precedent that may be established when it is determined, it is one of great importance. It is very clear that the equity of the case is with the plaintiff, for the agreed case which has been presented to the court shows, beyond a doubt, that he is entitled to recover, unless barred by the statute of limitations. It admits, therefore, that he has paid to the government an amount of money, which has been illegally exacted from him, and that in equity he is entitled to recover; but the government claims that he is barred from such recovery by the statute of limitations. From the case it appears that he brought suit, and obtained a verdict, and that, according to the practice that then existed in this court (after verdict had been rendered for the plaintiff), the matter was referred to the officials at the customhouse, for the purpose of enabling them to make up their adjustment of the amount of damages. This was done, and they made up the amount without giving any notice in regard to it to the plaintiff or the plaintiff's counsel. They sent a certificate to the clerk that the amount found to be due to the plaintiff was nearly $5,000; judgment was entered in pursuance of that certificate, and the plaintiff was paid that amount. Subsequently it was ascertained that various items had been omitted in that adjustment, for which the plaintiff was undoubtedly entitled to recover, unless barred by the statute of limitations.

Now, in such a case as the one now presented to me, if I could see any way consistent with my duty, and with the well-settled principles of law which have been laid down for my guidance, that would enable

me to get over this bar by the statute of limitations, I would cheerfully do it, and at once direct a verdict to be rendered in favor of the plaintiff. I confess, however, that I cannot see how this can be accomplished. (I will consider the case further, and should I arrive at a different conclusion, the verdict shall be reversed.) It is claimed that various instructions were received from the treasury department to collectors at New York, Boston, and elsewhere, which amount to a new promise in law. From 1863 down to the present time, a judgment against the collector cannot be enforced against him so far as it bound his property, and it can only be satisfied out of the treasury department, under the directions of the secretary of the treasury. The last promise was in 1858, which is relied upon. At that time Mr. Maxwell had been out of office a number of years. Mr. Guthrie issued the first letter in 1856, and Mr. Cobb issued another in 1858, referring to that of 1856. In 1858 an execution would have been issued against the property of Mr. Maxwell.

Now it is claimed that although the promise, when it was made, was not the promise of the defendant, Maxwell, it did not come within the statute of the New York Code, as far as this question was concerned, and because congress changed the liability of the collectors, that changes the contract. The court is in this case asked to give this new promise a construction which the law does not warrant, and by it to remove a bar which it did not remove at the time it was made. Now that bar was removed by that promise in 1858, if it were ever removed. Consequently I can see no other way at the present time, after a careful consideration of this matter, and with a desire to avoid this bar if I can, than to direct a verdict for the defendant, subject to the opinion of the court.

The defendant, therefore, will take a verdict subject to the opinion of the court. Should the court, after further consideration, see any mode by which this bar can be removed, the verdict will be changed in favor of the plaintiff, with an order of reference.

Verdict for defendant, subject to the opinion of the court.

[NOTE. Judgment was subsequently rendered on the verdict in favor of defendant, and a motion made to open the judgment was granted, the judgment vacated, and a new order of reference made to assess the damages. See Case No. 3,415.]